UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EDDIE JUNIOR SAEZ,

    Petitioner,

v.                    Case No.:  2:21-cv-531-SPC-NPM

UNITED STATES OF AMERICA,

    Respondent.

_____/

## OPINION AND ORDER[1]

Before the Court is pro se Petitioner Eddie Saez's Amended Motion to Vacate Sentence Under 28 U.S.C. § 2255 (Doc. 12).[2]  The Government has responded in opposition (Doc. 14), to which Saez has replied (Doc. 15).  Also here is an affidavit filed by Saez's trial counsel ("Lawyer").  (Doc. 13).

## BACKGROUND

Because the Court writes only for the parties, who are familiar with the background, it includes only those facts necessary to explain the decision.  By one-count indictment, the Government charged Saez with being a felon in

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them.  The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[2] Citations to this docket are "(Doc.)."  Citations to the criminal case—*United States v. Saez, 2:18-cr-00069-SPC-MRM-1 (M.D. Fla.)*—are "(Cr.Doc.)."

possession of a firearm.  Saez pleaded not guilty and went to trial.  A jury convicted him.  Saez appealed, and the Eleventh affirmed.  *United States v. Saez*, 796 F. App'x 616, 618 (11th Cir. 2019).  This motion followed.

Before jumping to the merits, the Court clarifies the docket.  Saez filed a § 2255 memorandum without a corresponding motion.  The Court liberally construed that filing as a timely § 2255 motion and opened this case.  Later, the Court held a status conference to discuss several matters, including Saez's waiver of attorney-client privilege.  The Court granted Saez leave to amend his § 2255 petition, which he did.  The amended petition (Doc.  12) renders the original (Doc. 1) moot.

In amending, Saez abandoned three issues raised in the original motion (Grounds 2, 5, and 8). So the Court doesn't address those matters.  For clarity, however, the Court follows Saez's numbering of his § 2255 Grounds (i.e., it will not reorganize them).  With that settled, the Court continues.  And as before, it liberally construes Saez's filings.  *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

## LEGAL STANDARDS

Saez seeks relief based on ineffective assistance of counsel.  (*See* Doc. 12). The general standards controlling this collateral attack follow.

**A. § 2255**

A federal prisoner may move "to vacate, set aside, or correct [his] sentence" where it: (1) violates "the Constitution or laws of the United States"; (2) comes from a court "without jurisdiction"; (3) exceeds "the maximum authorized by law"; or (4) "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A § 2255 motion, however, is "not [a] surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004). Relief is "reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Id.* (cleaned up). The petitioner bears the burden of proof under § 2255. *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015).

**B. Ineffective Assistance**

The Sixth Amendment guarantees a right to reasonably effective assistance of counsel. A two-part test determines whether the convicted person gets relief. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Petitioner must establish: (1) "counsel's performance was deficient" and "fell below an objective standard of reasonableness"; and (2) "the deficient performance prejudiced the defense." *Id.* Failing to show either *Strickland* prong is "fatal" on its own. *Kokal v. Sec'y, Dep't of Corr.*, 623 F.3d 1331, 1344 (11th Cir. 2010).

When considering the first prong, "courts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Sealey v. Warden*, 954 F.3d 1338, 1354 (11th Cir. 2020) (quoting *Strickland*, 466 U.S. at 689). The second prong requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 1355 (quoting *Strickand*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome, which is a lesser showing than a preponderance of the evidence." *Id.* (cleaned up). "At the same time, 'it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding' because 'virtually every act or omission of counsel would meet that test.'" *Id.* (quoting *Strickland*, 466 U.S. at 693). "Surmounting *Strickland*'s high bar is never an easy task." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

### DISCUSSION

In all, Saez says his Lawyer was ineffective for five reasons. The Court disagrees and explains why below.[3]

---

[3] Sections A, B, C, and D below accept Saez's version of events because the motion fails on the record even assuming his facts are true. *See* 28 U.S.C. § 2255(b); *Broadwater v. United States*, 292 F.3d 1302, 1303-04 (11th Cir. 2002). Section E concerns Ground 7, on which the Court held an evidentiary hearing. That section includes the relevant factual findings.

**A. Ground 1**

To start, Saez claims Lawyer was ineffective for failing to move to suppress the gun. He offers two arguments on how a suppression motion would have prevailed. First, officers searched his home before getting a search warrant. (Doc. 12 at 7). Second, a protective sweep of his home could not have led officers to the gun because it was in a knitted cap on a closet's top shelf. (Doc. 12 at 7). Neither argument wins.

A petitioner can establish ineffective assistance of counsel by showing an unreasonable failure to suppress evidence. *See Kimmelman v. Morrison*, 477 U.S. 365, 374-75 (1986). To prevail on such a claim, "the defendant must . . . prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Id.* at 375. "If a search was constitutional, then counsel is not obligated to move to suppress the evidence or dismiss the indictment and a defendant is not prejudiced by counsel's failure to do so." *Castillo v. United States*, 816 F.3d 1300, 1303 (11th Cir. 2016); *see also Zakrzewski v. McDonough*, 455 F.3d 1254, 1260-61 (11th Cir. 2006).

Counsel cannot be deficient for forgoing meritless tactics. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001). And if an exception to the warrant requirement applies, petitioner cannot suffer prejudice by failing to move to

suppress—even if that failure were deficient.  *E.g.*, *Thompson v. United States*, 826 F. App'x 721, 727 (11th Cir. 2020) (holding no prejudice because inevitable discovery exception applied).

To start, the trial testimony details police had the warrant before searching.  (Cr. Doc. 144 at 155-56, 158-60, 162-64, 187, 196-97, 202-03, 217-19, 221, 223, 233-35, 239, 248).  But even accepting Saez's story, his conclusory claim cannot carry the day.  He offers nothing to rebut the fact that police drafted and applied for the warrant before searching.

Worse yet, Saez never suggests Lawyer knew police found the gun before getting a warrant.  Rather, his sister ("Sister")—who often met with Lawyer—simply says police searched while waiting for the warrant.  But again, nobody contends Lawyer knew that.  And an affidavit clarifies Laywer's records that showed "a warrant had been issued prior to the search of the residence." (Doc. 13 at 5-6).  What's more, Saez relies on unidentified "search" and "seizure logs," which he does not provide, to prove his point.  (Doc. 12 at 7, 17).  Yet without those documents, or even an explanation of them, the Court cannot say Lawyer was ineffective.  Saez's conclusory argument does not show an objectively reasonable attorney in Lawyer's place would have filed a suppression motion. So the representation was not deficient.  *See Zakrzewski*, 455 F.3d at 1260-61.

Even if a Fourth Amendment violation occurred, Saez doesn't show the outcome would be any different if Lawyer moved to suppress.  In other words,

he doesn't establish prejudice. *Kokal*, 623 F.3d at 1344-45 (explaining the burden rests with petitioner to show "a reasonable probability the result of the proceeding would have been different."); *Treffinger v. United States*, 798 F. App'x 428, 432-33 (11th Cir. 2020).

The inevitable discovery exception to the warrant requirement allows admission of illegally obtained evidence. *See Nix v. Williams*, 467 U.S. 431, 444 (1984). The Government must make two showings: (1) "by a preponderance of the evidence that if there had been no constitutional violation, the evidence in question would have been discovered by lawful means"; and (2) "that the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct." *United States v. Watkins*, 13 F.4th 1202, 1211 (11th Cir. 2021) (citation omitted).

Even as Saez tells it, discovery of the gun was inevitable:

> [Police] entered the subject residence without a warrant four hours prior to securing warrant. [Police] would not allow family members inside of the residence to move around while they were awaiting issuance of the search warrant. . . . [They] conducted the underlying search prior to the search warrant being issued.

(Doc. 12 at 16-17) (errors in original). In other words, police searched the house while awaiting—but actively pursuing—a search warrant. Eventually, police got that warrant. Saez fails to question the warrant's sufficiency or validity.[4]

---

[4] His conclusory statement that police lacked probable cause to stop a Nissan Maxima (which set the whole search into motion) doesn't move the needle. Accepting Saez's story, he was

Nor does he contend any part of a premature search contributed to getting the warrant. Rather, he merely challenges the search before a state-court judge signed and returned the warrant to police.

On these facts, discovering the gun was inevitable. It made no difference if police waited for the warrant because searching a knit hat within a closet was inside the warrant's scope. *See* (Cr. Doc. 64-1). Simply put, discovery was a foregone conclusion.

The only way police would not have discovered the gun was if Saez or his family spoliated evidence, like removing or hiding it better. Even if that supposition were valid, these facts clarify that was impossible. When police searched the house, Saez was under arrest and the area secure (i.e., police restrained everyone inside). So the only outcome was that police would find the gun when executing the warrant. The exclusionary rule's purpose is "putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred." *Nix*, 467 U.S. at 443. If police waited on the warrant they already applied for, they would be in the same spot (though on firmer constitutional footing) had no misconduct occurred. Meaning the inevitable discovery doctrine would apply.

---

not in the car. What's more, he provides no facts to support his legal conclusion. Likewise, no word from the driver puts probable cause at issue—leaving the warrant affidavit unrebutted as to probable cause for the stop. (Doc. 64-1 at 2).

Precedent is not to the contrary.  *See, e.g.*, *United States v. Satterfield*, 743 F.2d 827 (11th Cir. 1984).  In *Satterfield*, police executed a warrantless search *before* applying for a warrant.  So "the Government had not yet initiated the lawful means that would have led to the discovery of evidence." *Id.* at 846; *see id.* ("The Government cannot *later initiate* a lawful avenue." (emphasis added)).[5]  As a result, the exception didn't apply.  But police here sought the warrant before searching.  According to Saez, they were simply waiting for it to issue.  So *Satterfield* differs.  *See, e.g.*, *Johnson*, 777 F.3d at 1275 ("Our precedents make clear that the purpose of the requirement of active pursuit is to exclude evidence that was not being sought in any fashion."); *Watkins*, 13 F.4th at 1215 ("*Satterfield*'s requirement that the alternative means of discovery be actively underway before the constitutional violation occurs is limited to cases where that alternative means of discovery is a search warrant."); *United States v. Hernandez-Cano*, 808 F.2d 779, 784 (11th Cir. 1987) ("The focus in *Satterfield* was on timing.").

Because Saez cannot meet either *Strickland* prong, Ground 1 fails.

---

[5] *See also* *United States v. Virden*, 488 F.3d 1317, 1323 (11th Cir. 2007) ("[I]nevitable discovery did not apply because the police had not taken any steps to procure the warrant prior to conducting the illegal search."); *United States v. Johnson*, 777 F.3d 1270, 1277 (11th Cir. 2015) ("The after-acquired search warrant was not a lawful means which made discovery inevitable because they were not pursuing those means when they searched the house." (cleaned up)).

**B.  Ground 3**

Next, Saez argues Lawyer was ineffective by not calling Sister to testify at trial.  Notably absent from the record, however, is any discussion of what Sister's testimony might be. Instead, Saez merely refers to Sister's affidavit that challenges Lawyer's decision not to call family members (including Sister) *at sentencing*.  (Doc. 12 at 18).  Saez tries to save his argument in the reply brief, claiming Sister's trial "testimony would have shown that the firearm in question was not" his.  (Doc. 15 at 3).  This argument is not enough for five reasons.

First, Saez asserted his argument on Sister's trial testimony for the first time in reply.  This is improper.  *Oliveiri v. United States*, 717 F. App'x 966, 967 (11th Cir. 2018) (explaining the petitioner waived a claim "raised . . . for the first time in his reply to the government's response."

Second, Saez still doesn't identify facts on which Sister might testify.  He does not explain how the expected testimony would help.  *Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011) (explaining the relevant "§ 2255 Rules mandate fact pleading as opposed to notice pleading." (cleaned up)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("Conclusory allegations of ineffective assistance are insufficient." (citation omitted)).

Third, there is no suggestion Lawyer knew Sister could offer exculpatory testimony.  To be sure, Sister was "frequently involved in discussions with"

Lawyer.  (Doc. 12 at 16).  But nothing in the record reflects Lawyer knew Sister could offer this defense at trial.

Fourth, Lawyer's decision who to call was a strategic one, which the Court is reluctant to criticize with 20/20 hindsight and years to ponder. *Rhode v. Hall*, 582 F.3d 1273, 1284 (11th Cir. 2009) ("But which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." (cleaned up)).

And fifth, Sister's testimony would have been redundant. Seaz's wife testified, at length, that the gun was hers.  Lawyer even called another witness to corroborate Wife bought the gun.  Yet the jury didn't believe them.  Any decision Lawyer made not to present cumulative evidence from Sister on this point was not ineffective.  *See Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1324 n.7 (11th Cir. 2002) ("A petitioner cannot establish ineffective assistance by identifying additional evidence that could have been presented when that evidence is merely cumulative."); *see also Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1157 (11th Cir. 2017) (collecting similar cases).

In short, Lawyer was not deficient for failing to call Sister as a witness at trial.  And even if he were, the failure was not prejudicial.  So Ground 3 fails.

## C.  Ground 4

Next, Saez contends Lawyer was ineffective by instructing Wife to concede his guilt.  As the argument goes, Lawyer told Wife to concede Saez was

a marijuana dealer without his knowledge. This falls below reasonable standards because, according to Saez, he retained ultimate authority to plead guilty. And finally, because Wife conceding Saez's guilt served no purpose, the decision was prejudicial.

The Court is unconvinced. Although Saez contends this is an ineffective assistance challenge, he is incorrect. *See McCoy v. Louisiana*, 138 S. Ct. 1500, 1510-11 (2018) ("Because a client's autonomy, not counsel's competence, is in issue, we do not apply our ineffective-assistance-of-counsel jurisprudence."). All the same, Saez has no claim under either standard.

Saez had the final say on rejecting a plea and maintaining his innocence. *Id.* at 1508. But the challenged decision relates to an uncharged offense— possession and distribution of weed. This was a felon in possession of a gun case. The Government charged nothing related to drugs. Nor did the jury consider a drug offense as evidence of Saez's guilt. So Lawyer's decision to concede a separate offense (which conclusive evidence supported) did not infringe Saez's right to maintain his innocence and go to trial on the charged conduct. *See id.* at 1509 ("When a client expressly asserts that the objective of '*his* defence' is to maintain innocence *of the charged criminal acts*, his lawyer must abide by that objective and may not override it by conceding guilt." (second emphasis added)).

Rather, Lawyer's concession was a strategic trial decision within his power. *See Gonzalez v. United States*, 553 U.S. 242, 249 (2008). Admitting to the weed avoided impeachment of, and possible liability for, Wife. What's more, Lawyer's decision followed a thorough motion in limine discussed at the Final Pretrial Conference. The Government clarified Saez's drug dealing would become a much larger feature of the case if he disputed it. (Cr. Doc. 142 at 41-50, 53-56). So by directing Wife to concede drug dealing, Lawyer ensured the Government could not introduce more evidence of the fact.

Relatedly, Saez's entire premise makes no sense. Lawyer called Wife to provide Saez's strongest defense: The gun was hers, and she never saw Saez with it. Lawyer did not put Wife on the stand to testify about Saez being a drug dealer. Instead, the Government asked about that on cross. Saez pled no contest to selling weed and served a year in jail on that conviction. (Cr. Doc. 113 at 11). Wife knew that. Put another way, Lawyer's instruction for Wife to concede—if asked—Saez was a weed dealer amounted to an instruction not to lie on the stand. It is not somehow improper for an attorney to instruct witnesses not to commit perjury.

At bottom, Lawyer's conduct neither impugned Saez's right to plead not guilty nor amounted to ineffective assistance. So Ground 4 fails.

## D. Ground 6

Moving on, Saez next challenges Lawyer not making *Batson* objections during jury selection.  *See Batson v. Kentucky*, 476 U.S. 79 (1986).

Saez misunderstands his legal guarantees.  He seems to believe a jury of "peers" means jurors with his race, socioeconomic status, and town of residence.  That isn't true.  As Chief Judge Corrigan recently explained:

> Perhaps understandably, but mistakenly, *Batson* is sometimes thought to guarantee a party a so-called "jury of one's peers"—meaning a jury with members of the same race as the party.  However, *Batson* is premised upon the constitutional right of the prospective juror not to be excluded from a jury on account of race, not on the right of a litigant to have a jury of a particular racial composition.

*Williams v. Consol. City of Jacksonville*, No. 3:00-cv-469-J-32TEM, 2006 WL 4794172, at *6 (M.D. Fla. Sept. 11, 2006); *see also United States v. Green*, 742 F.2d 609, 611-12 (11th Cir. 1984) ("Defendants are not entitled to a jury of any particular composition.").   If Saez intended to challenge the venire or procedures for summoning jurors, he did not support that showing here.  *See, e.g.*, *Green*, 742 F.2d at 611-12.

On the merits, Saez's challenge falls well short.  The three-part inquiry for a *Batson* challenge is: (1) the challenging party must "make a prima facie showing that the striking party employed a peremptory challenge on the basis of race"; (2) if shown, the court demands "the striking party to offer a race-neutral reason for employing his peremptory strike"; and (3) once offered, the

"court must decide, in light of both parties' representations, whether the challenging party persuasively demonstrated the striking party's discriminatory motive." *United States v. Robertson*, 736 F.3d 1317, 1325-27 (11th Cir. 2013). Courts must consider "all relevant circumstances." *Batson*, 476 U.S. at 96-97.  But "the ultimate burden of persuasion 'rests with, and never shifts from, the opponent of the strike.'" *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1038 (11th Cir. 2005) (quoting *Johnson v. California*, 545 U.S. 162, 171 (2005)).

Saez states the Government showed a pattern of striking Hispanic or Latino jurors.  Yet he doesn't support his argument with any facts.  It is unclear how many struck jurors (if any) were Hispanic or Latino. The Government exercised six peremptory strikes: (1) Ronald Faust, (2) Paul Andresen, (3) Robert Hunt, (4) Jackie Ramirez, (5) Larry Byrnes, and (6) Rhonda Meyer. (Doc. 144 at 88-90, 110).[6]  Perhaps the Court could speculate Ramirez is Hispanic or Latino—which would be a guess.  Even so, striking a single juror does not constitute the requisite pattern to make a prima facie *Batson* challenge.  *E.g.*, *Cent. Ala. Fair Hous. Ctr., Inc. v. Lowder Realty Co.*, 236 F.3d 629, 636 (11th Cir. 2000) ("[T]he mere fact of striking a juror or a set of jurors

---

[6] The parties agreed on six for-cause challenges.  (Doc. 144 at 80-87, 109-10).  Voir dire revealed legitimate reasons to strike each juror.  And there is no suggestion Lawyer somehow conspired with the Government to strike jurors based on race.

of a particular race does not necessarily create an inference of racial discrimination.").

Saez needs context to show the circumstances raise a possibility of discrimination. He offers nothing helpful though. At most, Saez says there were four to six jurors "on the starting juror pool" who were black, Hispanic, or Latino. (Doc. 12 at 17). But he never specifies if the Government struck those jurors. Nor does he say how many wound up on the jury (except one Hispanic juror who apparently served). This conclusory presentation does not create even a prima facie showing of racial discrimination.

Saez similarly contends the Government struck all jurors from Lehigh Acres. Even if relevant to a *Batson* challenge—which it wasn't—Saez is wrong. The Government struck one Lehigh resident (Ramirez), while another (Susan Pratico) sat on the jury.

Finally, Saez says Lawyer was ineffective for failing to strike a pregnant juror. Saez does not identify who he believes was pregnant. Nor does the record reflect testimony on pregnancy. All the same, nothing disqualifies pregnant women from jury service. So Lawyer did not err by allowing a juror just because she was pregnant.

Because Lawyer had no basis for a *Batson* challenge, failing to loft one was not ineffective. Ground 6 thus fails.

## E.  Ground 7

Finally, Saez contends Lawyer did not advise him of the right to enter an open plea, along with the advantages of doing so.  On this issue, the Court held an evidentiary hearing.

A petitioner may allege ineffective assistance if counsel "failed to advise the defendant of the option to enter an open plea." *Broderick v. United States*, No. 8:18-cv-1058-T-27SPF, 2020 WL 1511854, at *5 (M.D. Fla. Mar. 30, 2020). For petitioner to show prejudice, there must be "a reasonable probability that: (1) he would have pled guilty straight up; (2) the Court would have accepted the open plea; (3) the defendant would have appealed the sentence; and (4) the defendant's sentence after the appeal would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* (cleaned up).

Ground 7 boils down to a credibility determination.  Lawyer says he had multiple conversations with Saez about his defense to the charge (i.e., he had neither actual nor constructive possession of the firearm because his wife owned it); benefits of trial versus pleading (e.g., a possible three-level sentence reduction for acceptance of responsibility); possible plea agreement with the Government (though one was never formalized); and Saez's likely sentencing range per the United States Sentencing Guidelines.  Those conversations all ended the same—Saez wanting to go to trial.

At the hearing, Lawyer also testified that Saez had asked him about an open plea before trial. According to Lawyer, he told Saez that he would be better off trying for a plea agreement in which the Government would not oppose a sentencing credit for a related state court case. This conversation ended like the others—Saez wanting to go to trial.

Saez tells a different story. He claims Lawyer "never advised [him] of his right to enter an open guilty plea . . ., nor was he advised of the [sentencing benefits] of such an open plea." (Doc. 12 at 12). He also claims that had Lawyer explained the difference between actual and constructive possession (an element of the charged offense) he would have entered an open plea and gotten a three-level acceptance of responsibility reduction. At bottom, Saez faults Lawyer for not giving him the best- and worst-case scenarios to make an informed decision on pleading or going to trial.

"Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." *United States v. Williams*, 731 F.3d 1222, 1230 (11th Cir. 2013). When weighing credibility, the Court must consider the witness' interests, along with "the internal consistency of the testimony, or his candor or demeanor on the stand." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749-50 (11th Cir. 2002); *Rivers v. United States*, 777 F.3d 1306, 1317-18 (11th Cir. 2015).

Having heard the testimony in person and reviewed the record, the Court finds Lawyer's testimony to be more credible. Lawyer's testimony tracks both the record and common sense. He is a reputable criminal defense attorney who Saez hired to defend him. Lawyer has years of experience in federal court, trying cases and defending clients at sentencing hearings. The Court is hard-pressed to believe such a seasoned attorney would have ignored his client's inquiry about an open plea and forgotten to explain how the acceptance of responsibility reduction operates. What's more, Lawyer received a flat rate for representing Saez, so he had no monetary incentive for this case to end via trial or plea. At bottom, Lawyer's testimony was forthcoming, sincere, and honest.

But Saez's story (along with Sister and Wife's) contains inconsistencies and strains credibility. To start, Saez and Wife say Lawyer communicated no information about pleading. Yet according to Sister, Saez "advised he was offered plea offers from the Government[.]" (Doc. 12 at 16). Also, knowing a jury has rejected his defense and the Eleventh Circuit has affirmed his conviction, Saez has few (if any) avenues left other than to turn against his attorney. But Saez's attack on the reasonableness of Lawyer's representation, particularly with the open plea, is far-fetched. Even accepting Saez's version of events, he has not persuaded the Court of any reasonable probability that he would have pleaded guilty straight up had Lawyer acted differently. Since

the beginning of this case through the § 2255 hearing, Saez has remained steadfast that his wife—not him—owned the firearm.  With the benefit of hindsight (and in a last-ditch effort), he now declares an open plea and its possible sentence reduction would have gotten him to abandon that defense. Saez's one-eighty pivot shows buyer's remorse more than the required reasonable probability.  Because Saez has not met his burden, Ground 7 fails.

Accordingly, it is now

**ORDERED:**

1. Petitioner's Amended Memorandum of Law in Support of Motion to Vacate, Set Aside or Correct Sentence, Pursuant to 28 U.S.C. § 2255 (Doc. 12) is **DENIED**.

2. Petitioner's Memorandum of Law in Support of Motion to Vacate, Set Aside or Correct Sentence, Pursuant to 28 U.S.C. § 2255 (Doc. 1) is **DENIED as moot**.

3. The Clerk is **DIRECTED** to deny any pending motions, terminate all deadlines, enter judgment, and close this case.

4. The Clerk is **DIRECTED** to file a copy of this Order in the related criminal case (*United States v. Saez*, 2:18-cr-69-SPC-MRM).

### CERTIFICATE OF APPEALABILITY ("COA")

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather,

a district court must first issue a COA.  A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To make such a showing, a petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (citations omitted).  Saez did not make the requisite showing here and may not have a COA on any ground of his Motion.

**DONE** and **ORDERED** in Fort Myers, Florida on February 6, 2022.

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

Copies:  All Parties of Record